U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2012 FEB 24 P 1:07
JON A. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STEVEN AVERY,<br>    Plaintiff,<br><br>v.<br><br>GERALD A. PAGEL, IN HIS OFFICIAL AND<br>INDIVIDUAL CAPACITY;<br>JOHN BYRNES, IN HIS OFFICIAL AND<br>INDIVIDUAL CAPACITY;<br>GARY HEMAUER, IN HIS OFFICIAL AND<br>INDIVIDUAL CAPACITY;<br>CALUMET COUNTY, IN ITS OFFICIAL AND<br>INDIVIDUAL CAPACITY;<br>CORRECTIONAL OFFICER(S) JOHN DOE(S),<br>IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,<br>    Defendants. | Case No. 12-C-0192 |

**COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §§ 1983, 1985, AND 1986**

Plaintiff, Steven Avery, a state prisoner, *pro se*, for his complaint against defendants: Gerald Pagel, John Byrnes, Gary Hemauer, the Calumet County Wisconsin, and John Doe(s) County Jail Correctional Officer(s), brings a civil rights action for damages and declaratory relief under 42 U.S.C. §§ 1983, 1985, and 1986. This complaint alleges that the plaintiff's rights under the 1st, 4th, 5th, 9th, and 14th Amendments of the United States Constitution including but not limited to freedom from unreasonable restriction from association and speech, unreasonable search and seizure, privacy, equal protection, and due process were violated by those acting under color or state law.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(3) and (4). The matters in controversy arise under 42 U.S.C. §§ 1983, 1985, and 1986.

1

(a) Venue properly lies in this District pursuant to 28 U.S.C. Section 1391(b)(2), because the events giving rise to this cause of action occurred in Calumet County, Wisconsin, which are located within the Eastern District of Wisconsin.

## I. PLACE OF CONFINEMENT

2. Plaintiff is currently confined at:

Wisconsin Secure Program Facility

1100 Morrison Dr.

P.O. Box 9900

Boscobel, WI 53805

3. The claim stated herein is the result of actions of those acting under color of state law. There is a grievance procedure in the Calumet County jail that plaintiff was located at however there was no filing of a grievance with the jail.

4. Plaintiff has filed no other lawsuits dealing with the same facts involved in this action.

## II. PARTIES

5. Plaintiff Steven Avery DOC #122987, SSN # (last four digits) 6920, was at all times relevant hereto, a pretrial detainee in the custody of the Calumet County Sheriff. At the time of the events relevant hereto, plaintiff was incarcerated in the Calumet County jail.

6. Defendant Gerald A. Pagel was at all relevant times herein the Sheriff for the Calumet County Sheriff's Department located at: 206 Court St., Chilton, WI, 53014. He is sued individually.

7. Defendant John Byrnes was at all relevant times herein the Jail Administrator for the Calumet County Jail located at: 206 Court St., Chilton, WI, 53014. He is sued individually.

2

8. Defendant Gary Hemauer was at all relevant times herein a correctional officer for the Calumet County Jail located at: 206 Court St., Chilton, WI, 53014. He is sued individually.

9. Defendants Calumet County Jail Correctional Officer(s) John Doe(s) were at all relevant times herein correctional officers or other jail workers at the Calumet County Jail located at: 206 Court St., Chilton, WI, 53014. They are sued individually.

10. Defendant the County of Calumet, Wisconsin runs the Calumet County Sheriff's Department which was run by policy a maker/administrator, at all relevant times herein and is located at: 206 Court St., Chilton, WI, 53014. The Calumet County Sheriff's Department has the responsibilities of setting policy and custom, supervising, and instructing its officers in acting under color of state law. It is sued individually.

## III. PREVIOUS LAWSUITS

11. Plaintiff has not begun other lawsuits in state or federal court relating to the facts involved in this action.

12. Plaintiff has not begun other lawsuits in state or federal court relating to his imprisonment.

## IV. STATEMENT OF CLAIM

13. On November 9th, 2005 the plaintiff was arrested for being a felon in possession of a firearm. The arrest was executed under the authority of a "CRIMINAL COMPLAINT AND WARRANT" that was filled out by Thomas Fassbender, of the State of Wisconsin Department of Justice, Division of Criminal Investigations, and presented to "special prosecutor" Kenneth R. Kratz, District Attorney for the County of Calumet, Wisconsin. See Exhibit One. The "WARRANT" was not signed by a judge and did not follow the prescribed "MANDATORY PROVISIONS" as laid out in Wis. Stat. § 968.04 (3).

14. Upon being arrested on November 9th, 2005, plaintiff was taken to the local Aurora Hospital where he was stripped naked, searched, photographed, and his DNA was collected under the supervision of defendant Pagel and his investigators, apparently on the authority of a "SEARCH WARRANT" signed by the Honorable Judge Fox. See Exhibit Two. The warrant does not appear to be supported by oath or affirmation as no affidavit has been found to be connected with the issuance of this warrant.

15. On November 9th, 2005, at 5:03 p.m., after being forced to be stripped naked and photographed, plaintiff was booked into the Calumet County Jail ("jail"). "Arresting Officer "# 824" (name unreadable) of "Department" "CASO" filled in a "MEDICAL SCREEING INFORMATION" form (Exhibit Three) showing that there was no "information or observations that indicate this prisoner may be suicidal or shows observable signs of depression…"

16. Plaintiff was strip searched again at 5:40 p.m. See Exhibit Four. This search was authorized by defendant Byrnes and performed by Correctional Officer Kurt Kohler. He was then placed in an isolation cell.

17. From the time of his incarceration at the jail, the plaintiff was required to wear leg irons and hand cuffs whenever he left the cell block.

18. Plaintiff was also strip searched every time that the cell block was routinely shaken down or when he went on a visit.

19. All visits at the jail were non-contact visits.

20. Plaintiff states that he observed no other pretrial detainee that was required to wear leg irons or be strip searched routinely.

21. On November 30th, 2005, plaintiff spoke with defendant Hemauer who noted in Exhibit Five that the plaintiff has asserted that "he was doing okay." This exhibit shows that the plaintiff's only complaint at that point was that the shower wasn't comfortable.

22. On January 14th, 2006 plaintiff was transported from the Brown County jail back to the Calumet County jail. Under Section 2 of Exhibit Six it is noted that no self-harming or suicidal behavior, or any other bizarre, unstable, or otherwise psychological/emotional issues were noted by staff.

23. On January 31st, 2006 defendant Pagel noted that plaintiff would be facing "[a]dditional charges" ... "in the next several weeks..." See Exhibit Seven. In this exhibit, defendant Pagel makes the negative inference that "suicide information" has not been noted concerning the state of mind of the plaintiff at that time.

24. On February 1st, 2006 defendants Hemauer and Byrnes met with plaintiff and discussed his state of mind. Plaintiff complained that he didn't want to wear "leg restraints when has is being moved inside the jail (visiting, professional visits, etc)." Plaintiff further noted that "no one has to" wear these restraints if they aren't "a problem" for the jail. Defendant Byrnes stated he would discuss the issue with defendant Pagel. See Exhibit Eight.

25. Defendant Byrnes discussed the leg iron issue with defendant Pagel. See Exhibit Nine. It "was decided leg irons will continue to be used during movement inside the jail." Exhibit Nine notes that this was part of an existing standing order memorialized in a "memorandum issued by JA Byrnes on 11/09/05."

26. On February 15th, 2007 defendant Byrnes clarified that defendant Pagel had ordered plaintiff to "be handcuffed while he is in the secure hallway." See Exhibit Ten.

5

27. On February 27th, 2006 Brendan Dassey made an initial statement to police investigators concerning his knowledge of the murder of Theresa Halbach. See Exhibit Eleven Page Four.

28. On February 27th, 2006 plaintiff was placed in administrative segregation "until 700" could "speak with him." See Exhibit Twelve.

29. In Exhibit Thirteen Brenda Lisowe "Lisowe" noted that "Per #700, Avery was taken off the 15 minute checks. Avery never stated he wanted to hurt himself. He is just put into the I-Cell for closer monitoring."

30. On February 28th, 2006 "801 & 700" spoke with plaintiff at 10:30 a.m. See Exhibit Fourteen. Plaintiff states he was questioned concerning the murder of Theresa Halbach. Plaintiff's attorneys were not present at this interrogation, despite his having invoked his Miranda rights previously.

31. On February 28th, 2006 at 10:54 a.m. the plaintiff was strip searched and returned to the cell block he had been living in prior to being sent to segregation. See Exhibit Fifteen.

32. On February 28th, 2006 at 11:44 a.m. defendant Byrnes noted that he and defendant Pagel spoke with plaintiff concerning being placed in "an ISO cell." See Exhibit Sixteen. As noted, plaintiff refused to comment on "the issue of some family members providing new (damaging) information" in his case.

33. On March 1st, 2006 Brendan Dassey made another statement to investigators. See Exhibit Eleven page four.

34. On March 1st, 2006 at 3:24 p.m. defendant Hemauer noted that the phone in plaintiff's cell block was turned off. See Exhibit Seventeen.

35. On March 1st, 2006 at 3:51 p.m. plaintiff was again moved to isolation cell "I-003." See Exhibit Eighteen.

6

36. In Exhibit Nineteen defendant Hemauer memorialized the events surrounding the moving of the plaintiff to the isolation cell. Plaintiff is noted to have attempted to bargain to remain out of segregation, becoming willing to give up his phone access. Further, it is noted that the plaintiff made open mention that he would be meeting with his attorney.

37. Exhibit Twenty notes that the plaintiff was taken to a conference room and questioned concerning the statements made by Brendan Dassey. Again, plaintiff did not have counsel present while being questioned by defendant's Pagel and Byrnes.

38. After being questioned plaintiff was returned to I-3.

39. On March 2nd, at 3:34 p.m. plaintiff was released from "administrative segregation" and returned to "general population." See Exhibit Twenty One. This exhibit also notes that "television/telephone/visitation" privileges were "restored."

## COUNT ONE: THE PLAINTIFF WAS DENEID HIS RIGHTS TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

### LEGAL THEORY

40. The right to privacy is no firmly ensconced among the individual liberties protected by our Constitution. *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). Moreover, "one of the clearest forms of degradation in Western society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy." 3 George B. Trubow, ed., Privacy Law and Practice, P 25.02[1] (1991). "It is settled now ... that the Constitution places limits on a State's right to interfere with a person's ... bodily integrity." *Casey*, 505 U.S. at 849. In *York v. Story*, 324 F.2d 450, 455 (CA9 1963), cert. denied, 376 U.S. 939 (1964), the Court stated, "We cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figure from view of strangers,

7

and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity ..."

41. Plaintiff contends that his 4th Amendment rights were violated when he was taken from the cell block he was in and was strip searched without probable cause and placed in segregation on the orders of defendant Pagel in conjunction with the statement made by Brendan Dassey on February 27th, 2006. The purpose of this movement to the isolation cell was to engage in an illegal interrogation. This interrogation was performed under heavier weight than any normal interrogation in that the plaintiff, who was already in custody, was forced to endure a strip search before being illegally questioned.

42. Plaintiff asserts that the 4th Amendment violations visited upon him were part of a larger scheme to deny him of his rights. There was no penological interest to be served by his being moved to a segregation cell. Indeed, the order to move him came from the sheriff himself, not from any of his subordinate jail administrators. The documentation shows that defendant Pagel anticipated the statement by Dassey at the beginning of February 2006. The entire procedure was obviously illegal. "This *secret inquisition* by the police when defendant asked for and was denied counsel was as serious an invasion of his constitutional rights as the denial of a continuance in order to employ counsel was held to be in ***Chandler v. Fretag***, 348 U.S. 3, 10." ***Spano v. New York***, 360 U.S. 315, 326 (1959), Mr. Justice Douglas concurring, joined by Mr. Justice Black and Mr. Justice Brennan. (Emphasis in original).

43. The ***Spano*** Court commented heavily on the violation of rights in conducting secret interrogations outside the presence of counsel. Plaintiff had already asserted his ***Miranda*** rights and defendants Pagel and Byrnes knew it. This action of placing the plaintiff in segregation could not have produced a viable statement that could have been used at trial. Any evidence that

8

would have come from it would have been suppressible under the "fruit of the poisonous tree" doctrine. "This is a kangaroo court procedure whereby the police produce the vital evidence in the form of a confession which is useful or necessary to obtain a conviction. They in effect deny him effective representation by counsel. This seems to me to be a flagrant violation of the principle announced in *Powell v. Alabama* ..." *Id.*

44. The placing of the plaintiff in segregation was more than an attack on his mental and emotional state in order to illegally extract a confession. It was a punishment for his silence. "'[t]he Fourteenth Amendment secures against state invasions the same privilege that the Fifth Amendment guarantees against federal infringement – the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence.'" *Schmerber v. California*, 384 U.S. 757, 670-61 (1966) (citing *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)).

45. The placing of the plaintiff in segregation for the only purpose of punishment and illegal interrogation is not acceptable. Plaintiff puts forward that this was not done as a part of normal confinement and so he should not have had to complain through the jail complaint system. This was an illegal investigational tactic that was employed using the jail as a tool, much like the rack and screw to extract a statement and attack the mental and emotional state of the plaintiff.

### COUNT TWO: THE PLAINTIFF WAS DENEID HIS RIGHTS TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

**LEGAL THEORY**

46. Plaintiff contends that his 4th Amendment rights were violated when he was placed in segregation without a probable cause, a hearing, or for any legitimate penological reason on the orders of defendant Pagel on March 1st, 2006.

9

47. Again the plaintiff was placed in a segregation cell, after being strip searched, on March 1st, 2006. Brendan Dassey had made a second statement and defendant Pagel decided to employ the same illegal methods he had used only a few days earlier. Again this failed to get the plaintiff to act against his penal interest. None the less, the same argument from above is cited here to support a separate cause for relief.

### COUNT THREE: THE PLAINTIFF WAS DENEID HIS RIGHTS TO FREE SPEECH AND ASSOCIATION

**LEGAL THEORY**

48. While placed in segregation and for periods of time while in his normal cell block the plaintiff was denied access to the phone. This was done in order to cause him pain and deny him access to his family and other support. The purpose is related to the illegal strip searches that occurred in conjunction with the statements made on February 27th, 2006 and March 1st, 2006 by Brendan Dassey. Infringing upon the plaintiff's rights to free speech and association here were not related to any penological interest and served only the illegal purposes of defendant Pagel and those who worked with him in this conspiracy.

### COUNT FOUR: THE PLAINTIFF WAS DENEID HIS RIGHTS TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

49. The plaintiff was ritualistically strip searched without probable cause by jail staff. These strip searches were also visual body cavity searches. Plaintiff contends that these were done in order to harass him and were not done as a result of any reasonable penological interest. In *Bell v. Wolfish*, 441 U.S. 520 (1979), the United States Supreme Court discussed the issue of strip searching pretrial detainees. The Court concluded that because the jail in question had contact visits the penological interests of the jail were served by full strip and body cavity searches.

50. In the present case this logic does not apply. Other similarly situated persons were not so searched before the visits at the Calumet County Jail. Further, the visits there were not contact visits. Also, the plaintiff was restrained in both leg irons and handcuffs in these visits. Plaintiff contends that this ritualistic invasion into his bodily integrity and privacy was not a part of any normal jail practice and was in fact a mandated policy instituted for him alone. These continual actions on the part of jail and law enforcement officials goes beyond any reasonable action on their parts. They are liable.

**RELIEF REQUESTED**

51. WHEREFORE, plaintiff respectfully requests judgment in his favor with an order declaring that the defendants have acted in violation of the United States Constitution and violated his rights. Plaintiff further requests a judgment in his favor for nominal damages in an amount not less than $1 for every instance of a violation of his rights, jointly and severally against defendants. Plaintiff additionally requests punitive damages in the sum of $15,000,000 or what amount the Court may deem just and proper, jointly and severally against defendants. Finally, plaintiff requests any attorney fees and court costs that may accrue and any other such relief as it may appear plaintiff is entitled.

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this _22_ day of _February_, 2012.

_Steven Avery #122987_
Steven Avery – Prisoner ID #122987

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STEVEN AVERY,<br>　　　　Plaintiff,<br><br>　　v.<br><br>GERALD A. PAGEL, ET Al.,<br>　　　　Defendants. | Case No. 12-C-0192 |

**DECLARATION OF AUTHENTICITY OF DOCUMENTS AND STATEMENT**

I, Steven Avery, declare that:

1. I am the *pro se* plaintiff in the above-entitled matter.

2. I hereby certify that all exhibits presented with my complaint for the above-entitled matter are all true and accurate representations of the original documents as I have received them.

3. I declare that the events presented in my complaint for the above-entitled matter are true and accurate.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing statements are true and correct.

Date: 2-22-2012

Steven Avery #122987
Wisconsin Secure Program Facility
P.O. Box 9900
1100 Morrison Dr.
Boscobel, WI 53805